### EASTMAN *v.* KEASOR.

In a suit for malicious prosecution, it is competent, for the purpose of rebutting malice and to show probable cause, to prove that the defendant acted upon the advice of counsel, having in good faith fully laid the case before him.

Where the suit was for maliciously prosecuting the plaintiff for selling a wagon without the defendant's consent, which wagon, with a harness, had been mortgaged to him by the plaintiff;—*Held,* that to rebut malice and show probable cause, it was competent to prove that before the prosecution the defendant had learned that the plaintiff had secreted the harness.

CASE, for malicious prosecution. The defendant, Edmund Keasor, had caused the plaintiff, Daniel Eastman, to be indicted for selling, without the defendant's consent, a wagon, mortgaged by the plaintiff to the defendant, on which indictment the plaintiff was tried and acquitted. The plaintiff had mortgaged to the defendant a wagon and harness, and the plaintiff had subsequently sold a wagon. It was in controversy whether the wagon sold by the plaintiff was the wagon which the parties understood to be included in the mortgage, and whether the wagon sold was owned by the plaintiff at the time he executed the mortgage, and the evidence upon these questions was conflicting. The defendant testified that at the time the mortgage was written and executed, the plaintiff said that he had a wagon then being finished at a shop in the village where they then were, and that they agreed that that wagon should be included in the mortgage.

The defendant testified, subject to the plaintiff' exception, that before the criminal prosecution, he consulted two attorneys at law, and stated to them the facts as he understood them, and that said attorneys advised him that the mortgage was good to hold the property mortgaged, and that it covered the wagon.

On cross examination of the plaintiff, testimony was elicited tending to show that the plaintiff had, before prosecution, sent the harness from Laconia to Dover, to secrete it from the defendant. The defendant testified, subject to the plaintiff's exception, that before the prosecution, being in the plaintiff's shop, he asked the plaintiff where the harness was that he mortgaged to the defendant, and that the plaintiff said he did not know where it was; that a man took it away from behind the door; and that the defendant sent to Dover and got the harness. Subject to the plaintiff's exception, the dedefendant's counsel put to the defendant, who was a witness, this question: "What was your motive in prosecuting the plaintiff?" and subject to exception the defendant's answer: "I felt abused by

his course, and thought the law might protect me. I thought he was guilty. I had no malice."

The plaintiff testified that at the term when he was indicted, he gave bail for his appearance at the next term, and the case was continued; that just before the next term he went to Lowell on account of sickness and the case was again continued; that he returned to Laconia soon after the second term, and was arrested ten or twelve days before the third term and held in custody under keepers a few days, and then committed to jail; and that he understood and supposed that he was so arrested and imprisoned for his bail through the defendant. One of said keepers testified that while the plaintiff was in his custody the defendant told him to look out sharp for the plaintiff.

Subject to the plaintiff's exception, one Whipple, who was bail for the plaintiff, testified that he did not know that the plaintiff was gone at the term when the plaintiff was out of the State, till the case was called in court; that the plaintiff did not tell him that he was going away; that some weeks after that term he saw the plaintiff and he said nothing about his having gone away; and that he, Whipple, as bail, directed that the plaintiff be arrested and committed before the next term.

The jury returned a verdict for the defendant, which the plaintiff moved to set aside.

*Gale*, and *I. A. Eastman*, for the plaintiff, to the point that proof that the defendant had consulted counsel, was not admissible, cited *Tenney* v. *Evans*, 14 N. H. 347; *Ross* v. *Knight*, 4 N. H. 238; and 1 Greenl., Ev. sec. 103. To the question of the admission of the testimony about the harness, they cited 1 Greenl. Ev., secs. 51, 52; *Hersom* v. *Henderson*, 22 N. H. 498. Upon the point of the proof of the defendant's motive by his own testimony, they cited 2 Phill. Ev. 114; *Stone* v. *Crocker*, 24 Pick. 81; 2 Greenl. Ev., sec. 453.

*E. A. Hibbard*, for the defendant, to the point in respect to the advice of counsel, cited Hilliard on Torts 480, 481; and as to the proof of the defendant's motive, he cited *Norris* v. *Morrill*, 40 N. H. 355.

BELLOWS, J. The defendant, having caused the plaintiff to be indicted for selling without the defendant's consent a wagon mortgaged to him by the plaintiff, the plaintiff having been acquitted upon the trial, brings his action on the case for malicious prosecution.

It appeared that it was in controversy whether the wagon sold by the plaintiff was the one which the parties understood was included in the mortgage, and whether it was owned by the plaintiff at the time of executing the mortgage. Under the circumstances, the defendant was allowed to testify that before the criminal prosecution he consulted two attorneys at law, and stated to them the facts as he understood them, and they advised him that the mortgage was good to hold the property mortgaged, and that it covered the wagon.

This evidence was introduced apparently to rebut the existence of malice, and to negative the want of probable cause; and the question is, whether it was admissible for that purpose. His direct testimony that he had no malice would seem, on the authority of *Norris* v. *Morrill*, 40 N. H. 402, to be competent; and it seems to be settled that it is competent to show that the defendant acted *bonâ fide* upon the advice of counsel, the case being fully and fairly laid before him. *Raverga* v. *Mackintosh*, 2 B. & C. 693; *Snow* v. *Allen*, 1 Stark. N. P. 502; *Hewlet* v. *Critchley*, 5 Taunt. 277; *Mitchell* v. *Jenkins*, 5 B. & Ad. 588. This indeed is but the logical result of the necessity of making out the want of probable cause, which is defined to be such a state of facts in the mind of the prosecutor as would lead a man of ordinary caution and prudence to believe or entertain an honest and strong suspicion that the person arrested is guilty, as laid down by *Shaw*, C. J., in *Bacon* v. *Towne*, 4 Cush. 238. See, also, *James* v. *Phelps*, 11 Ad. & El. 483, 489; 2 Greenl. Ev., 454, 455, 457, and notes; 4 Stark. Ev., 911, *et seq.*; *Green* v. *Brackett*, 33 Me. 332; and accordingly it was held, in *Bacon* v. *Towne*, admissible to show that before the prosecution other persons had given the prosecutor information tending to create a belief of the guilt of the accused; and so it is held the defendant may prove by the examining magistrate the testimony that was laid before him.

Upon these principles we think the evidence was competent. It is true the case does not state that the facts were fully laid before the counsel; neither is the objection put or argued upon that ground. Indeed the defendant's testimony was that he stated the facts as he understood them.

But it is urged that this proof of the opinion of counsel should have been excluded, because the counsel themselves might have been called. This objection, however, can not avail the plaintiff, for the reason that it is the fact of the opinion having been given that is material, and therefore to be proved like any other fact, by any one who knows it. It is not introduced to prove that the plaintiff was in truth guilty, which would be clearly objectionable, but as tending to show that the defendant might in good faith and on reasonable grounds have believed him guilty.

The next question respects the admission of the testimony in regard to the harness, which was included in the same mortgage with the wagon; and the objection is, that proof of an attempt to secrete the harness from the defendant has no legal tendency to sustain the indictment; and this might be true, and still the testimony be admissible for another purpose, namely, to show the existence of probable cause in the mind of the defendant, and to rebut the charge of malice. It appears that before the prosecution was commenced, the prosecutor called upon the plaintiff and inquired for the harness, and was told by him that he did not know where it was; that a man had taken it from behind the door, and therefore the prosecutor sent to Dover and found it; and it appeared from the plaintiff's own cross-examination that there was reason to suspect that he sent it there to secrete it from the defendant; and inasmuch as this harness was part of the property mortgaged with the wagon; and as a

wagon had been sold by the plaintiff, which might have been the one mortgaged — although the evidence was conflicting on that point — we think that in determining the question of malice and probable cause, the jury might properly consider the plaintiff's conduct in respect to the harness, and its natural effect upon the prosecutor's mind.

The question was not whether the plaintiff was actually guilty, but whether the defendant had reasonable grounds to believe him guilty, and upon this principle evidence is admitted to show probable cause and want of malice, that would not be received to sustain the indictment; as, for example, the information that the prosecutor received before the prosecution was commenced, and the advice given by counsel; so, also, it has been held that the prosecutor may prove that the jury which acquitted the plaintiff doubted and hesitated for some time. 2 Greenl. Ev. 417. So, also, that, in addition to circumstances of suspicion, the character of the plaintiff was bad; 2 Greenl. Ev. 488; although this may be open to doubt. We are, however, of the opinion that the evidence in respect to the harness was admissible for the purpose indicated.

The only question remaining is in respect to the testimony of Whipple, which seems to be explanatory of the plaintiff's previous testimony, the whole having been, as we think, immaterial. The objection urged by the plaintiff's counsel, that Whipple's testimony was inconsistent with the facts in the case, furnishes no ground for setting aside the verdict; as this view would rather tend to confirm its want of materiality.

There must, therefore, be

*Judgment on the verdict.*