NEUMANN, Respondent, v. INDUSTRIAL SOUND ENGINEERING, INC., Appellant.

GELLERUP, d/b/a MIDWEST ENGINEERING COMPANY, Respondent, v. SAME, Appellant.

KOLLER, Respondent, v. SAME, Appellant.

*June 6—July 1, 1966.*

472

474

For the appellant there was a brief by *Thomas F. Nelson,* attorney, and *William S. Porter* and *Porter, Alverson & Porter* of counsel, all of Milwaukee, and oral argument by *William S. Porter.*

For the respondents there was a brief and oral argument by *Jack D. Moertl* of Milwaukee.

HALLOWS, J. In its findings of fact the trial court found the action in the bankruptcy court "was commenced upon the advice of counsel after a full and fair statement of the facts pertinent to the case as known to the plaintiffs at the time of the commencement of the action" and concluded such acts of the respondents constituted a defense to the claims of lack of probable cause and of malice. It is this finding of the trial court which is attacked on this appeal.

The appellant was incorporated in 1959 to operate an FM radio station and to furnish background music service. It succeeded a partnership composed of Larry C. LaRue and John E. Dieringer, each of whom became stockholders, directors and officers of the corporation. LaRue became its president and general manager; Dieringer its secretary and treasurer. Ernest Behagen later became a stockholder and director and was its vice-president and chief engineer. From its incorporation, the appellant was almost constantly in need of working capital.

The respondent Neumann was a general contractor who built the radio station and had a final invoice due of $1,322.51. The respondent Gellerup had performed services in securing an FM license and one of his invoices for $400 was unpaid. The respondent Koller had done masonry work on the studio building and payment of $250 had been withheld because of some minor dispute. Most of the negotiations with these respondents for payment of their claims were had with LaRue, who on behalf of the appellant was attempting to raise working capital. In this attempt a dispute arose between Dieringer, Behagen and LaRue, as a result of which LaRue resigned. He notified the respondents of the failure of his negotiations to secure the loan, told them the inventory had disappeared, the appellant had no bookkeeping system and he did not think they would receive payment of their claims, and advised them to see his attorney who was familiar with the affairs of the appellant.

The respondents sought the advice of LaRue's attorney, whom they told what they knew about their claims and the affairs of the appellant, and were advised to sign a petition to put it into involuntary bankruptcy. This petition was not sworn to on the personal knowledge of the respondents but they did affirm the truth of the allegations; the only important allegation being concealment of assets by the appellant with intent to hinder or delay its creditors as an act of bankruptcy. Some months later the petition was amended to include general allegations of the making of deceptive and false balance sheets.

The appellant raises six issues but they are all related to lack of probable cause or malice in their relationship with reliance upon the advice of counsel as a defense. In *Elmer v. Chicago & N. W. R. Co.* (1950), 257 Wis. 228, 43 N. W. (2d) 244, this court set down the six essential elements necessary to successfully sustain an action for malicious prosecution. See also *Pollock v. Vilter Mfg. Corp.* (1964), 23 Wis. (2d) 29, 126 N. W. (2d) 602;

*Schier v. Denny* (1960), 9 Wis. (2d) 340, 101 N. W. (2d) 35; and 34 Am. Jur., Malicious Prosecution, p. 706, sec. 6. Involved here are the two elements of the want of probable cause and the existence of malice in instituting the unsuccessful judicial proceeding and as to these, the appellant has the burden of proof. *Gladfelter v. Doemel* (1958), 2 Wis. (2d) 635, 87 N. W. (2d) 490; *Bromund v. Holt* (1964), 24 Wis. (2d) 336, 129 N. W. (2d) 149. In this the appellant is undoubtedly helped by the rule that the dismissal of the involuntary bankruptcy petition is *prima facie* evidence of lack of probable cause because unlike an ordinary civil suit a proceeding for involuntary bankruptcy stands in the same class as a criminal case or an insanity matter, wherein the rule applies. *Manz v. Klippel* (1914), 158 Wis. 557, 149 N. W. 375; *Bigelow v. Sickles* (1891), 80 Wis. 98, 49 N. W. 106; *Myhre v. Hessey* (1943), 242 Wis. 638, 9 N. W. (2d) 106. See also *Wilkinson v. Goodfellow-Brooks Shoe Co.* (Cir. Ct. Mo. 1905), 141 Fed. 218.

It is the generally recognized rule that the advice of an attorney, whom a client has no reason to believe to be personally interested, is conclusive of the existence of probable cause for initiating a criminal proceeding in reliance upon such advice when it is sought in good faith and given after a full disclosure of the facts within the client's knowledge and information. Restatement, 3 Torts, p. 416, sec. 666. The respondents' attorney had no personal interest in the outcome of the bankruptcy proceeding and his professional relationship to LaRue was not sufficient to destroy the effect of his advice upon the issue of probable cause. If the bankruptcy proceeding for this purpose is considered a civil proceeding, the rule is substantially the same and is stated in sec. 675 (p. 446), as follows:

"One who initiates civil proceedings against another has probable cause for so doing if he reasonably believes in the existence of the facts upon which his claim is based, and

"(a) reasonably believes that under such facts the claim may be valid at common law or under an existing statute, or

"(b) so believes in reliance upon the advice of counsel given under the conditions stated in sec. 666."

In *Brinsley v. Schulz* (1905), 124 Wis. 426, 102 N. W. 918, this court pointed out one of the most efficient ways of negating a *prima facie* showing of lack of probable cause was to prove the action was brought upon advice of counsel, particularly by a proper prosecuting officer if the action was a criminal matter, after a full statement to him of all the facts known to the defendant. The ultimate truth of the facts is not as important as an honest belief in the existence of the facts and a fair and full statement of them to counsel in order to obtain guidance in the matter. A full and fair statement of all the facts does not mean all the facts discoverable as contended by the appellant but all the facts within the knowledge of the person making the statement. *King v. Apple River Power Co.* (1907), 131 Wis. 575, 111 N. W. 668. This knowledge may be either founded on personal observation or upon credible information. It is for counsel to evaluate the weight and sufficiency of the facts and the advice of a reputable counsel in such cases, even if ultimately proved wrong, supplies the defense to lack of probable cause. We do not consider the respondents failed to fairly and completely disclose the facts as they knew them.

However, it is argued in effect the findings of the trial court are against the great weight and clear preponderance of the evidence because the respondents' lack of information concerning the appellant's affairs was such they could not verify a petition upon personal knowledge and they failed to make any inquiry from the appellant concerning the appellant's financial affairs after the resignation of Mr. LaRue. In addition, it is argued probable cause for instituting a petition for involuntary bankruptcy requires personal knowledge of the act of

bankruptcy because the petition must be verified. However, it is not required to defeat a charge of want of probable cause to have personal knowledge of all the facts or to be free of negligence, and it is plain from the bankruptcy petition the respondents affirmed the truth of the allegations but did not verify the facts on their personal knowledge. If this verification was not sufficient, the appellant did not raise the point in the bankruptcy court. It is also argued the respondents knew the appellant was not bankrupt and while this inference might possibly be drawn by a rather circuitous method of reasoning, the trier of the facts was not required to draw such inference, and did not.

It is charged the respondents did not seek to protect their interests as creditors in starting the bankruptcy proceeding but their purpose was to further the interest of LaRue and thus the respondents' malice was established as a matter of law. This argument does not find support in the evidence. No testimony is found in support of an inference the respondents' chief purpose was to aid LaRue. The facts are the creditors had money coming; they were told by LaRue there was dissension in the management; that he did not think they would be paid and advised them to seek his attorney who had knowledge of the appellant's affairs. No motive other than to collect and be paid what was owing to them is shown by the record.

It is further argued the respondents had no right to rely upon counsel's advice because they knew he had a separate interest in the outcome of the bankruptcy proceeding. This argument is based upon the premise that the false disclosure and reliance upon the advice of counsel is a complete defense not only as to want of probable cause but also as to malice. While there may be some dispute on this, see *Gladfelter v. Doemel, supra,* and *Elmer v. Chicago & N. W. R. Co., supra,* it is immaterial here because the claim of personal interest or motive of the attorney is not supported in the evidence. On this

record we must assume counsel gave advice in the interest of the respondents, his clients. The record shows the attorney had some knowledge of the affairs of the appellant; that was one reason the respondents retained him. His superior knowledge of the facts was a reason for the respondents' signing the petition. However, the attorney had no personal interest or stake in the outcome of the proceeding he advised commencing, within the meaning of the interest rule. See Comment *c* to Restatement, 3 Torts, p. 418, sec. 666.

It is probably true there was animosity between LaRue and Dieringer, but the malice of LaRue, if he in fact had malice, cannot be imputed to counsel and through him to the respondents. 34 Am. Jur., Malicious Prosecution, p. 729, sec. 45. The malice required for malicious prosecution must exist in fact in the person charged with the institution of the malicious-prosecution suit. Retaining counsel, under the facts of this case, raised no inference of malice or improper motive or of vindictive purpose by creditors who were primarily seeking the protection of their rights through bankruptcy proceedings.

We think the three respondents acted as reasonable men in their attempt to collect their debts, but even if their actions were not reasonable this would not be the equivalent of lack of probable cause or prove the existence of malice. There is no charge they did not honestly rely on counsel's advice. The trial court's finding that they made a full and fair statement of the facts to their counsel pertinent to the case as known to them is not against the great weight and clear preponderance of the evidence. Consequently, the finding of the trial court must be sustained.

*By the Court.*—Judgments affirmed.